# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

Case No:  CIV-15-69-D

BRANDY GEIGER,
Plaintiff,

v.

NSC CHICKEN LP, d/b/a CHICKEN EXPRESS,
Defendant.

## DEFENDANT NSC CHICKEN-DUNCAN, LLC'S
## MOTION FOR SUMMARY JUDGMENT

JEFFERSON I. RUST, OBA #16722
KELLY J. KRESS, OBA #30771
TOMLINSON · RUST · MCKINSTRY · GRABLE
Two Leadership Square, Suite 450
211 North Robinson Avenue
Oklahoma City, Oklahoma  73102
(405) 606-3350 Telephone
(866) 633-6162 Facsimile
jeffr@trmglaw.com
kellyk@trmglaw.com

*Attorneys for Defendant, NSC Chicken-Duncan, LLC*

February 2, 2016

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................iii

   I.     CASE LAW ........................................................................................iii

   II.    STATUTES.......................................................................................... vi

INTRODUCTION AND SUMMARY OF ARGUMENT................................................. 1

UNDISPUTED MATERIAL FACTS ............................................................................. 3

ARGUMENTS AND AUTHORITIES ........................................................................... 11

STANDARD OF REVIEW ............................................................................................. 11

   I.     PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE CLAIM OF HOSTILE ENVIRONMENT SEXUAL HARASSMENT ............................. 12

       A.   Burden of Proof ........................................................................ 12

       B.   Plaintiff Was Not Subjected to Severe or Pervasive Conduct that Would Alter the Terms and Conditions of Her Employment .............................. 15

       C.   Defendant Exercised Reasonable Care to Prevent Unlawful Harassment from Occurring ........................................................................... 19

       D.   Plaintiff Failed to Reasonably Take Advantage of Defendant's Discrimination and Harassment Safeguards............................................. 21

   II.    PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE CLAIM OF RETALIATION UNDER TITLE VII .............................................................. 23

       A.   Burden of Proof ........................................................................ 23

       B.   Plaintiff Did Not Engage in Protected Opposition to Unlawful Discrimination or Harassment ................................................................. 24

       C.   Plaintiff Was Terminated for Legitimate Non-Discriminatory and/or Non-Retaliatory Reasons and Cannot Establish Pretext................................... 26

           1.  Legitimate Non-Discriminatory/Non-Retaliatory Reasons ............... 26

2.  Pretext .............................................................................................. 27

CONCLUSION ...................................................................................................... 28

## TABLE OF AUTHORITIES

### I.     CASE LAW

*19 Solid Waste Dept. Mechs. v. City of Albuquerque*,
156 F.3d 1068, 1071-72 (10th Cir. 1998)................................................................ 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................. 11
*Id.* at 255 ............................................................................................................ 12
*Id.* at 247-48 ........................................................................................................ 12

*Anderson v. Wintco Inc.*,
314 F. App'x 135 (10th Cir. 2009) .................................................................................. 25
*Id.* at 137 ............................................................................................................ 25
*Id.* at 140-41 ........................................................................................................ 25

*Antonio v. Sygma Network, Inc.*,
458 F.3d 1177, 1181 (10th Cir. 2006) ......................................................................... 23-24

*Argo v. Blue Cross & Blue Shield of Kan., Inc.*,
452 F.3d 1193, 1202 (10th Cir. 2006) .......................................................................... 24

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742, 758-59, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) .................................... 13
524 U.S. at 765, 118 S.Ct. 2257 .................................................................................. 21

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed2d 345 (2006) .................................................... 24

*Chavez v. New Mexico*,
397 F.3d 826, 832 (10th Cir. 2005) .............................................................................. 16

*Clarke v. Bank of Commerce*,
506 F.Supp.2d 851 (N.D. Okla. 2007) ........................................................................... 17
*Id.* at 862 ............................................................................................................ 17
*Id.* at 864 ............................................................................................................ 18

*Debord v. Mercy Health System of Kansas, Inc.*,

737 F.3d 642, 650 (10th Cir. 2013) .......................................................................... 12, 13
737 F.3d at 654 ........................................................................................................... 20
737 F.3d at 655 ...................................................................................................... 22, 27

*Dick v. Phone Directories Co.*,
397 F.3d 1256, 1263 (10th Cir. 2005) ..................................................................... 14
397 F.3d at 1262-63 .................................................................................................. 14

*Faragher v. City of Boca Raton*,
524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ........................ 13, 14, 19, 20
524 U.S. at 807, 118 S.Ct. 2275 ............................................................................... 21

*Fye v. Okla. Corp. Com'n*,
516 F.3d 1217, 1224-25 (10th Cir. 2008) ................................................................. 23

*Gaff v. St. Mary's Regional Medical Center*,
506 F. App'x 726, 727-28 (10th Cir. 2012) ............................................................ 18

*Haley v. Am. Farmers and Ranchers Mut. Ins. Co.*,
2013 WL 1336745, *2 (W.D. Okla. 2013) ................................................................ 12

*Harsco Corp. v. Renner*,
475 F.3d 1179, 1187 (10th Cir. 2007) .................................................................... 15

*Hearron v. Voith Indus. Serv., Inc.*,
483 F. App'x 453 (10th Cir. 2012) .......................................................................... 16
*Id.* at 454-55 .............................................................................................................. 16
*Id.* at 455 ................................................................................................................... 17

*Helm v. Kansas*,
656 F.3d 1277 (10th Cir. 2011) ......................................................................... 19, 23
*Id.* at 1290 ........................................................................................................... 19, 22
*Id.* at 1288 ................................................................................................................. 20
*Id.* at 1289 ................................................................................................................. 20
656 F.3d at 1287 ........................................................................................................ 21

*Herrera v. Lufkin Indus., Inc.*,
474 F.3d 675, 680 (10th Cir. 2007) ........................................................................ 15

*Hinds v. Sprint/United Mgmt. Co.*,
523 F.3d 1187, 1202-03 (10th Cir. 2008) .............................................................. 26

*Knitter v. Corvias Military Living, LLC*,

758 F.3d 1214, 1225 (10th Cir. 2014) ............................................................. 12

*Luster v. Vilsack*,
667 F.3d 1089, 1093 (10th Cir. 2011) .............................................................. 27

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ................................. 23, 24

*Medlock v. Ortho Biotech, Inc.*,
164 F.3d 545, 549 (10th Cir. 1999) ...................................................................

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57, 66-67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ....................... 12, 13
477 U.S. at 65, 106 S.Ct. 2399 ......................................................................... 14

*Morris v. City of Colorado Springs*,
666 F.3d 654, 663-64 (10th Cir. 2012) ......................................................... 13-14
666 F.3d at 666 ................................................................................................. 16

*Neustrom v. Union Pac. R. Co.*,
156 F.3d 1057, 1066 (10th Cir. 1998) .............................................................. 11

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ................................ 13

*Peterson v. Utah Dep't of Corr.*,
301 F.3d 1182, 1188-89 (10th Cir. 2002) ......................................................... 25

*Petrosino v. Bell Atl.*,
385 F.3d 210, 223 (2nd. Cir. 2004) ................................................................... 14

*Semsroth v. City of Wichita*,
304 F. App'x 707, 722 (10th Cir. 2008) ............................................................ 15

*Smith v. Northwest Fin. Acceptance, Inc.*,
129 F.3d 1408, 1412 (10th Cir. 1997) .............................................................. 14

*Vajdl v. Mesabi Acad. Of KidsPeace, Inc.*,
484 F.3d 546, 551-52 (8th Cir. 2007) ............................................................... 16

*Williams v. Rice*,
983 F.2d 177, 181 (10th Cir. 1993) ................................................................... 25

## II.   STATUTES

Fed. R. Civ. P. 56(a) .......................................................................................................... 11

Title VII of the Civil Rights Act of 1964
42 U.S.C. § 2000e et seq (1964).................................................... 1-3, 11, 13-14, 16, 18, 27
42 U.S.C § 2000e-2(a)(1) ............................................................................................... 12
42 U.S.C. § 2000e-3(a) .................................................................................................. 23

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

BRANDY GEIGER,

                Plaintiff,

v.                                                            Case No. CIV-15-69-D

NSC CHICKEN LP, d/b/a
CHICKEN EXPRESS,

                Defendant.

## DEFENDANT NSC CHICKEN-DUNCAN, LLC'S
## MOTION FOR SUMMARY JUDGMENT

Defendant, NSC Chicken-Duncan, LLC (improperly named as NSC Chicken, LP), d/b/a Chicken Express ("Defendant" or "Chicken Express"), respectfully submits the following Motion for Summary Judgment as to Plaintiff, Brandi Geiger's ("Plaintiff" or "Geiger") claims for sex discrimination, harassment, hostile work environment, and retaliation brought under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff was employed for approximately one (1) month as a crew member at the Duncan, Oklahoma Chicken Express restaurant operated by Defendant. When she was first hired on September 2, 2013, Plaintiff was trained on Defendant's policies and procedures relating to her job duties, as well as Defendant's policies prohibiting harassment, discrimination and retaliation.

During her approximately thirty (30) day employment period, Plaintiff violated Defendant's cash handling policy on seven (7) separate occasions and was late for work four (4) times.  As a result of these violations, Plaintiff's employment was terminated by Defendant's former Human Resources Director and General Manager, Cynthia Argumaniz ("Argumaniz"), on October 2, 2013.  Duncan Assistant Manager, Rachel Mayberry ("Mayberry") recommended Plaintiff's termination to Argumaniz and Argumaniz made the final decision to terminate Plaintiff's employment.  At no time during Plaintiff's employment period of September 2, 2013 through October 2, 2013, did Plaintiff complain of sexual discrimination or harassment to any of Defendant's managers or owners or report any conduct by any of Defendant's managers, agents or employees that constitutes unlawful discrimination or harassment.

Plaintiff filed the current lawsuit against Defendant on January 21, 2015, asserting claims for sex discrimination, harassment, hostile work environment, and retaliation under Title VII.  (Complaint, ¶ 17, at p. 3).  Plaintiff's discrimination, harassment and hostile environment claims fail as a matter of law because Defendant's managers and agents did not engage in any conduct directed toward Plaintiff that was sufficiently severe or pervasive to alter the terms and conditions of her employment.  Further, undisputed evidence establishes that Defendant exercised reasonable care to prevent unlawful harassment from occurring and Plaintiff failed to reasonably take advantage of Defendant's discrimination and harassment safeguards.

Plaintiff's retaliation claim fails as a matter of law because she never engaged in any form of conduct protected under Title VII and was terminated for legitimate, non-

2

discriminatory reasons.  Because Plaintiff was not subjected to unlawful discrimination or harassment and never engaged in protected conduct under Title VII, Defendant is entitled to judgment as a matter of law on all claims asserted in this action.

## UNDISPUTED MATERIAL FACTS

1.      Chicken Express is a franchise restaurant chain, which operates over 190 locations throughout Texas, Oklahoma, Arkansas, Louisiana and Georgia.  Defendant owns and operates six (6) Chicken Express franchises in Oklahoma, located in Duncan, Chickasha, Woodward, Mustang, Moore, and Edmond.  (Argumaniz Affidavit, ¶ 2, Ex. "1").

2.      Plaintiff sought employment at Chicken Express in Duncan, Oklahoma, on August 30, 2013, and was hired by Manager Daniel Smith ("Smith") the same day. (Geiger depo., 21/19 – 23/6, Ex. "2").

3.      On September 2, 2013, Plaintiff reported to her first shift, completed formal paperwork, and received training on Defendant's policies and procedures. (Geiger depo., 26/1 – 28/4, Ex. "2").

4.      Plaintiff was trained on food service, operating the cash register, and Defendant's policies relating to attendance, cash handling, rules of conduct, as well as the Unlawful Harassment/Sexual Harassment Policy.  (Argumaniz Affidavit, ¶ 3, Ex. "1").

5.      Plaintiff signed an acknowledgement form on September 2, 2013, stating that she understood it was her responsibility to read and follow the policies contained in Defendant's Employee Handbook (Do's and Don'ts).  (Geiger depo., 45/2-20, Ex. "2"; Employee Agreement, signed 09/02/13, Ex. "3"; Agreement, signed 09/02/13, Ex. "4").

6.      Plaintiff completed a quiz pertaining to the contents of the Employee Handbook, understanding she had an obligation to complete the quiz truthfully and honestly. (Geiger depo., 45/24 – 47/3, Ex. "2").

7.      Defendant's Employee Handbook contained a policy on **Management Training**, which provided:

> All management must be trained and knowledgeable of the federal and state laws.  Any manager purposely not following or violating EEOC, OSHA, labor laws, etc., or the rules of the store can be immediately dismissed.  The following are laws that management needs to be aware of and any question need to be discussed with the owner.
> …
>
> If you believe you have been subjected to any form of discrimination, please provide a written complaint to the owner or management of the business.  Chicken Express will undertake an investigation and attempt to resolve the situation.  If Chicken Express determines that prohibited discrimination has occurred, immediate action will be taken commensurate with the severity of any offense.  Chicken Express will also take appropriate action to deter any future discrimination.
>
> Chicken Express will not retaliate against an employee for filing a complaint and will not knowingly permit retaliation by management or fellow employees.

(Employee Handbook, Management Training, p. 4. Ex. "5").

8.      Plaintiff never submitted any complaints in writing to Defendant's owners or managers.  (Geiger depo. 53/3-54/9, Ex. "2).

9.      Defendant's Employee Handbook contained an **Attendance** policy, which provided, in part:

- It is imperative that you report to work as scheduled.  Being on time is mandatory.
- Tardiness, leaving work early, and/or unexcused absences shall not be permitted.

4

(Employee Handbook, Attendance, pp. 6-7. Ex. "5).

10.     Plaintiff was aware of and understood Defendant's attendance policy and that it was her responsibility to clock in and out for herself.  (Geiger depo., 54/10-56/6, Ex. "2").

11.     Defendant's Employee Handbook contained a policy entitled **Unlawful Harassment/Sexual Harassment Policy**, which provided:

> The company has a strong commitment to the fair and equitable treatment of its employees.  This policy forbids intimidation, coercion or harassment of employees for reasons related to the individual's race, color, religion, national origin, age, sex or disability.
>
> The company forbids its employees to engage in sexual harassment.  No employee shall be discharged or discriminated against with regard to compensation, terms, conditions or privileges of employment in the basis of his or her sex.  Furthermore, employees shall not be classified or segregated on the basis of sex in any way that might deprive them of employment opportunities or damage their employment status.
>
> **ANY AND ALL FORMS OF SEXUAL HARASSMENT ARE PROHIBITED.**  Instances of sexual harassment include, but are not limited to, the following:
>
> - Subjecting employees in similar positions to different employment conditions when the employee's sex is the only reason for such action.
> - Abusing the dignity of an employee through insulting or degrading sexual remarks or conduct.
> - Making any sexual advances to an employee under one's supervision.
> - Making repeated unwanted sexual advances to any employee.
> - Making compliance with sexual demands a term or condition of employment.
> - Retaliation against any employee for complaining about the behavior described herein.
> - Creating an uncomfortable or hostile work environment for other employees by showing or displaying sexual or lewd materials or making sexual or lewd remarks.

> If there is a problem with any harassment, it should be reported to the management or ownership immediately so it can promptly be investigated and the appropriate action taken.  Proof of harassment can mean immediate dismissal.  Remember, most stores have video tapes that record 24 hours a day, 7 days a week.

> The owners name and phone number should be posted in the office.

(Employee Handbook, Unlawful Harassment/Sexual Harassment Policy, p. 12. Ex. "5").

12.     Plaintiff was aware of Defendant's Unlawful Harassment/Sexual Harassment Policy, what was prohibited, that it was her responsibility to report her complaints of harassment to management, and was aware that Agumaniz's telephone number was posted in the office.  (Geiger depo., 56/7-58/6, Ex. "2").

13.     Defendant's Employee Handbook contained a **Cash/Product Handling** policy which stated: "Mishandling of cash/product will result in disciplinary action up to and including termination."   Mishandling was defined to include "cash shortage/overage."   (Employee Handbook, Cash/Product Handling policy, p. 20. Ex. "5").

14.     Plaintiff testified that she understood the requirements of the **Cash/Product Handling** Policy and the consequences for violating it.   (Geiger depo., 60/13-18, Ex. "2").  Plaintiff also signed and acknowledged a separate Cash Handler Policy form, acknowledging her understanding of the policy and that violations of it "will result in action up to an including termination."  (Cash Handler Policy, signed 09/02/13, Ex. "6";

15.     Defendant's records reflect that Plaintiff's cash drawer was short on September 3, 2013 by $12.58.  (Duncan Daily Audit Report, dated 09/03/13, Ex. "7").

Plaintiff has no documentation to dispute the accuracy of this report.  (Geiger depo., 86/18-88/7, Ex. "2").

16.    Defendant's records reflect that Plaintiff's cash drawer was short on September 9, 2013 by $15.36.  (Documentation and Duncan Daily Audit Report, dated 09/09/13, Ex. "8").  Plaintiff has no documentation or reason to dispute the accuracy of this report.  (Geiger depo., 89/2-9, Ex. "2").

17.    Defendant's records reflect that Plaintiff's cash drawer was short on September 10, 2013 by $7.66.  (Documentation, dated 09/10/13, Ex. "9").  Plaintiff denies the accuracy of this documentation based solely on her memory.  (Geiger depo., 89/13-91/2, Ex. "2").

18.    Defendant's records reflect that Plaintiff's cash drawer was short on September 17, 2013 by $12.84.  (Written Warning, signed 09/17/13, and Duncan Daily Audit Report, dated 09/17/13, Ex. "10").  Plaintiff admits she signed the written warning for this violation and has no reason to dispute it.  (Geiger depo., 91/6-92/9, Ex. "2").

19.    Defendant's records reflect that Plaintiff's cash drawer was short on September 19, 2013 by $26.46.  (Documentation and Duncan Daily Audit Report, dated 09/19/13, Ex. "11").  Plaintiff has no reason to dispute the accuracy of this report.  (Geiger depo., 92/13-93/21, Ex. "2").

20.    Defendant's records reflect that Plaintiff's cash drawer was over on September 24, 2013 by $13.86.  (Written Warning (unsigned) and Duncan Daily Audit Report, dated 09/24/13, Ex. "12").  Plaintiff has no reason to dispute the accuracy of this report.  (Geiger depo., 93/25-95/2, Ex. "2").

21.     Defendant's records reflect that Plaintiff's cash drawer was short on September 25, 2013 by $16.10.  (Duncan Daily Audit Report, dated 09/25/13, Ex. "13").  Plaintiff has no reason to dispute the accuracy of this report.  (Geiger depo., 95/6-22, Ex. "2").

22.     Defendant's records reflect that Plaintiff's cash drawer was short on October 1, 2013 by $10.18.  (Duncan Daily Audit Report, dated 10/01/13, Ex. "14").  Plaintiff has no reason to dispute the accuracy of this report.  (Geiger depo., 96/1-12, Ex. "2").

23.     Defendant's records reflect that Plaintiff was tardy for work on Friday September 13, 2013, Monday September 16, 2013, Thursday September 26, 2013, and on October 1, 2013.  (Documentation forms and Duncan TimeSheet Information, date range 09/01/13-10/10/13, Ex. "15").   Plaintiff admits the time sheet contains accurate representations of when she punched in and was late for work.  (Geiger depo. 97/9-102/24, Ex. "2").

24.     Geiger was terminated by Argumaniz on October 2, 2013 for mishandling company funds on multiple occasions, which constitute separate violations of the Cash Handler Policy.   (Argumaniz Affidavit, ¶ 4, Ex. "1").  Geiger admits she was terminated by Argumaniz on October 2, 2013 for violation of policies.  (Geiger depo., 79/15-20; 83/2-8, Ex. "2").

25.     Plaintiff's signed Intake Questionnaire provided to the EEOC on November 27, 2013, which confirms that the reason given by Argumaniz as the basis of Plaintiff's

termination was "violations (write ups) for being tardy and short but I was never written up." (EEOC Intake Questionnaire, signed 11/27/13, paragraph 7, at p. 2, Ex. "16").

26.     Argumaniz provided a sworn Affidavit stating that she had no knowledge of Plaintiff's allegations of sexual harassment at any time during Plaintiff's employment with Chicken Express.   Argumaniz testified that she had no knowledge of Plaintiff's allegations of harassment until Defendant received Plaintiff's EEOC Charge. (Argumaniz Affidavit, ¶ 5, Ex. "1").

27.     Plaintiff's allegations of harassment are:  (1) Smith called Plaintiff "sexy" one time around September 9, 2013; (2) Smith pulled a wallet out of her back pocket on one occasion around September 10, 2013, alleging touching Plaintiff with his hand right above her rear end as he pulled the wallet out; (3) Smith asked Plaintiff if she liked "anal sex" on one occasion and the same day asked her if she "liked it rough;" (4) Smith asked Plaintiff if her boyfriend was satisfying on two to five occasions; (5) Smith asked Plaintiff shortly before she was terminated if she wanted to go on a motorcycle ride with him; and (6) Smith allegedly followed Plaintiff around the Duncan restaurant.  (Geiger depo. 64/9-72/25, Ex. "2"; Complaint, Doc. #1, ¶¶ 9-11, at pp. 2-3).

28.     Plaintiff admitted she never told Smith his alleged conduct was inappropriate, offensive, or unwelcome. (Geiger depo., 111/22-112/17, Ex. "2").

29.     Plaintiff's Complaint alleges that "Geiger complained about Smith's conduct to an assistant manager at the store, Rachel Mayberry."  (Complaint, Doc. #1, ¶ 14, at p. 3).

30.     Plaintiff testified in her deposition the extent of her complaint to Mayberry was that Smith "won't leave me alone or something like that," that Mayberry allegedly laughed and said "I know, he's like following you around," and Geiger stated: "I told her I wasn't mad at him, he just – I didn't want to go on a date with him.  And she told me that he acts like that with all of the young girls."  (Geiger depo., 73/11 –74/23, Ex. "2").

31.      Plaintiff admitted that she did not mention the words "sexual harassment" or "complaint" to Mayberry and provided Mayberry none of the specific allegations of harassment included in her Complaint.  (Geiger depo., 75/11-76/6; 78/24-79/3, Ex. "2").

32.     Plaintiff never put her complaint in writing prior to filing this lawsuit and never made any complaints to Argumaniz, despite seeing her in the store at least once a week.  (Geiger depo., 79/4-80/25, Ex. "2").

33.     Upon being notified by Argumaniz of her termination on October 2, 2013, Plaintiff never told Argumaniz that she believed she was being fired for allegedly making a harassment complaint or that her termination was unfair in any way.  (Geiger depo., 83/9-84/5, Ex. "2").

34.     Mayberry made a recommendation to Argumaniz to terminate Plaintiff's employment due to job performance issues and not following policies and procedures, but did not involve Smith in the decision or discuss Geiger's termination or job performance with him.  (Mayberry depo., 44/21-45/3; 46/1-47/11; 78/24-79/13; 81/19-82/18, Ex. "17").

35.     Mayberry was aware of her obligations to report incidents of sexual harassment but denies receiving any sexual harassment complaints from Plaintiff or any other Chicken Express employee.  (Mayberry depo., 32/12-33/5; 85/22-88/25, Ex. "17").

36.     Mayberry admits overhearing a conversation between Plaintiff and co-employee, Quinette Tyler, indicating that, if they ever got fired, they would go after Smith and accuse him of sexual harassment.   However, Mayberry overheard this conversation after she recommended Plaintiff's termination to Argumaniz and confirmed that Plaintiff never came to her and complained about any type of harassment. (Mayberry depo.,  91/3-92/25; 96/5-8; 125/3-11, Ex. "17").

## ARGUMENTS AND AUTHORITIES

## STANDARD OF REVIEW

Summary judgment is appropriate "where the record taken as a whole could not lead a rational trier-of-fact to find for the non-moving party."  *19 Solid Waste Dept. Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998).  "[T]he relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R. Co.,* 156 F.3d 1057, 1066 (10th Cir. 1998).

Defendant is entitled to summary judgment on Plaintiff's Title VII claims because there is no <u>genuine</u> dispute regarding any <u>material</u> fact and the relevant law does not entitle Plaintiff to her requested relief.  *See* FED. R. CIV. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is

genuine if the evidence would permit a reasonable jury to find for either party. *Id.* at 255. However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

If Defendant establishes that no genuine dispute exists over the material facts entitling it to summary judgment, Plaintiff must go beyond the pleadings and set forth specific facts that would be admissible in evidence showing that a genuine issue exists for trial. *See Haley v. Am. Farmers and Ranchers Mut. Ins. Co.*, 2013 WL 1336745, *2 (W.D. Okla. 2013). This showing cannot be made.

## I.   PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE CLAIM OF HOSTILE ENVIRONMENT SEXUAL HARASSMENT.

### A. Burden of Proof.

Title VII makes it unlawful "for an 'employer' to 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment' on account of sex." *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014) (citing 42 U.S.C. § 2000e-2(a)(1)). Title VII also makes it unlawful for an employer to permit sexual harassment in the workplace. *See* 42 U.S.C. § 2000e-2(a)(1); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

An employee who is sexually harassed by a supervisor may have a claim against the employer under Title VII. *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 650 (10th Cir. 2013) citing *Meritor*, 477 U.S. at 66-67, 106 S.Ct. 2399; 42 U.S.C. §

2000e-2(a)(1).  An employer may be directly or vicariously liable for a hostile workplace. To show direct liability, "an employee must present enough evidence for a reasonable jury to find that the employer knew or should have known about the harassment but failed to stop it."  *Debord*, 737 F.3d at 650 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758-59, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).  "The 'should-have-known' formulation is, in effect, a showing that the employer was negligent in failing to stop harassment."  *Id.*  An employer can still be held vicariously liable for harassment committed by a supervisor against an employee in the absence of negligence.  To avoid vicarious liability, "an employer can take advantage of an affirmative defense—the *Faragher* defense—by showing both that the employer 'exercised reasonable care to avoid harassment and eliminate it when it might occur,' and that the complaining employee 'failed to act with like reasonable care to take advantage of the employer's safeguards.'"  *Debord*, 737 F.3d at 650 (citation omitted).

"Under Title VII, harassment is actionable only when it is 'sufficiently severe or pervasive' such that a reasonable person would find the work environment to be hostile or abusive *and* the employee in fact perceived it to be so."  *Debord*, 737 F.3d at 650 (citing *Meritor*, 477 U.S. at 67; 106 S.Ct. 2399; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

Courts applying this standard have made clear that "**Title VII does not establish 'a general civility code' for the workplace;" therefore, "run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile environment claim**."  *Morris v. City of Colorado*

*Springs*, 666 F.3d 654, 663-64 (10th Cir. 2012) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), and citing *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275; *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2nd. Cir. 2004)) (emphasis added).

"An employer creates a hostile work environment **when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment**." *Morris,* 666 F.3d at 664 (emphasis added). However, "'[t]he mere utterance of a statement which 'engenders offensive feelings in an employee' would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII.'" *Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1997) (quoting *Meritor*, 477 U.S. at 65, 106 S.Ct. 2399) (further citations omitted). (citations omitted).

To establish a sexually hostile work environment existed, Plaintiff must prove: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition or privilege of the plaintiff's employment and created an abusive working environment." *Dick*, 397 F.3d at 1262-63 (citation omitted) (alteration in original). To survive summary judgment on a sexual harassment hostile environment claim, Plaintiff "must show that a rational jury could find the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is

14

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Semsroth v. City of Wichita*, 304 F. App'x 707, 722 (10th Cir. 2008) (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)).   Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007).

### B. Plaintiff Was Not Subjected to Severe or Pervasive Conduct that Would Alter the Terms and Conditions of Her Employment.

In this case, Plaintiff's allegations of sexual harassment consist of the following: (1) Smith called Plaintiff "sexy" one time around September 9, 2013; (2) Smith pulled a wallet out of her back pocket on one occasion around September 10, 2013, allegedly touching Plaintiff with his hand right above her rear end as he pulled the wallet out; (3) Smith asked Plaintiff if she liked "anal sex" on one occasion and the same day asked her if she "liked it rough;" (4) Smith asked Plaintiff if her boyfriend was satisfying on two to five occasions; (5) Smith asked Plaintiff shortly before she was terminated if she wanted to go on a motorcycle ride with him; and (6) Smith allegedly followed Plaintiff around the Duncan restaurant.  (Undisputed Material Fact ("UMF" No. 27).  Under applicable law, these allegations failed to establish sufficiently severe or pervasive conduct which constitutes unlawful harassment.

The Tenth Circuit has repeatedly held:  "A plaintiff does not make a sufficient showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of … sporadic … slurs….   Instead, there must be a steady barrage of opprobrious … comments." *Morris*, 666 F.3d at 666 (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005)) (internal citation omitted); *see also Vajdl v. Mesabi Acad. Of KidsPeace, Inc.*, 484 F.3d 546, 551-52 (8th Cir. 2007) (concluding that isolated comments and touchings were not sufficiently pervasive to establish a hostile environment).

In *Hearron v. Voith Indus. Serv., Inc.*, 483 F. App'x 453 (10th Cir. 2012) (unpublished), the plaintiff brought a Title VII action against her former employer alleging hostile work environment, sex discrimination and retaliation.   The plaintiff appealed to the Tenth Circuit after the District Court entered summary judgment for the employer.  The Tenth Circuit concluded that the District Court properly granted summary judgment to the employer because the plaintiff failed to produce evidence showing severe or pervasive harassment by her supervisor.    In support, the Tenth Circuit cited the following findings made by the District Court:

> Here, plaintiff complains that on one occasion, her supervisor patted her buttock and stated "you need a spanking and you're gonna like it."   She also complains that at some point, he was "overly friendly" and flirtatious and "shared his personal business" with her.  These incidents, even if true, are insufficient to state a legally actionable claim under Title VII.

*Id.*  at 454-55.  The Tenth Circuit agreed and held that, while the supervisor's conduct "involved both unacceptable offensive touching and a harassing statement, the offensive conduct occurred on only one occasion, and it was not severe enough to support a hostile

work environment claim." *Id.* at 455.  Accordingly, summary judgment for the employer was affirmed. *Id.*

In *Clarke v. Bank of Commerce*, 506 F.Supp.2d 851 (N.D. Okla. 2007), two female plaintiffs sued their former employer, claiming the employer allowed the commission of sexually offensive acts that constituted a sexually hostile work environment.  At issue before the District Court was the defendant's motion for summary judgment.  The plaintiff's evidence of unlawful harassment included (1) the supervisor displaying a photograph of women clad in bikinis on his computer, (2) the defendant's president making a reference to the plaintiff's husband as the man she happened to be sleeping with, (3) the supervisor's statements regarding "collateral" on a co-employee's breast augmentation, (4) the supervisor passing around pictures of topless or scantily clad women at a board meeting, (5) a sexually suggestive hypnotist's performance at a company Christmas party, and (6) the supervisor's female assistant showing one plaintiff her tattoo after the Christmas party.  *Id.* at 862.

The District Court found this evidence insufficient to constitute actionable harassment under Title VII, holding:

> Viewing the record as a whole, the Court finds that, as a matter of law, the incidents cited by plaintiffs were not "sufficiently severe or pervasive 'to alter the conditions of [plaintiffs'] employment and create an abusive working environment.'"  Only Clarke suffered from two sexual comments directed toward her.  The most severe incident—the tattoo incident—was not based on sex and occurred in a private environment.  The other comments and incidents, while vulgar and unprofessional, do not constitute a "steady stream of vulgar and offensive epithets because of [plaintiffs'] gender [that] would be sufficient to establish a claim under Title VII based on the theory of hostile work environment."  These incidents were

17

"unpleasant and boorish," but not so severe or pervasive as to alter plaintiffs' conditions of employment.

*Id.* at 864.   Based on these findings, the District Court granted summary judgment in favor of the employer.   *Id.*; *see also Gaff v. St. Mary's Regional Medical Center*, 506 F. App'x 726, 727-28 (10th Cir. 2012) (unpublished) (finding replete evidence of a co-worker's immature conduct were neither sufficiently severe or pervasive to constitute an abusive work environment under Title VII).

Based on these authorities, Plaintiff's allegations of a few immature and unprofessional comments made by Smith are not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.   The only sexually explicit comments contained in Plaintiff's Complaint relating to "anal sex" and "liking it rough" were made one occasion and on the same day.   (UMF No. 27).   Plaintiff admits she never told Smith his conduct was inappropriate, offensive or unwelcome.   (UMF No. 28).

The remaining comments relating to allegedly calling Plaintiff sexy one time, following Plaintiff around the store,  pulling a wallet from her back pocket, asking if her boyfriend was satisfying and asking her to go on a motorcycle ride, while immature, flirtatious or overly friendly, are insufficient to alter the terms and conditions of Plaintiff's employment.   (UMF No. 27).   They are not physically threatening or humiliating and would not unreasonably interfere with an employee's work performance. This is particularly true where, when Plaintiff allegedly reported Smith's conduct to Mayberry (which Mayberry denies), Plaintiff did not relate the details of alleged harassment contained in her Complaint.   Plaintiff merely reported that Smith "won't

leave me alone or something like that" and "I didn't want to go on a date with him." (UMF Nos. 30-31). Plaintiff never used the words complaint or sexual harassment, never provided details, never put her complaint in writing, and never submitted a complaint to Argumaniz or the owners of the Duncan store. (UMF Nos. 8, 31 and 32).

In sum, based on the authorities cited above, Plaintiff cannot establish that she was subjected to sufficiently severe or pervasive conduct that would alter the terms and conditions of her employment. The allegations of harassment in her Complaint are supported by nothing more than her own testimony and corroborated by no independent witnesses. More importantly, the report she claims to have made to Mayberry failed to remotely establish that she had been subjected to a hostile work environment. Accordingly, summary judgment in favor of Defendant is warranted.

### C. Defendant Exercised Reasonable Care to Prevent Unlawful Harassment from Occurring.

Even if Plaintiff could establish that she was subject to a hostile work environment, undisputed evidence shows that Defendant exercised reasonable care to prevent unlawful harassment from occurring—the first element of the *Faragher* defense. *See Helm v. Kansas*, 656 F.3d 1277 (10th Cir. 2011). The Tenth Circuit has consistently recognized that "the existence of a valid sexual harassment policy is an important consideration in determining whether an employer acted reasonably to prevent sexual harassment." *Id.* at 1290.

In *Helm*, the defendant implemented a sexual harassment policy "that prohibits sexual harassment, contains a complaint procedure and list of personnel to whom

harassment may be reported, and includes an anti-retaliation provision*." Id.* at 1288. Evidence also established that the defendant distributed its policy to employees through a handbook and required them to sign a form affirming that they had read and understood the policies in the handbook. The defendant also provided training to management-level employees. *Id.* The plaintiff argued that the harassment policy was buried in the middle of a fifty-page handbook and the defendant did not provide training to non-management employees.

The Tenth Circuit disagreed and found the policy sufficient to establish that the defendant acted reasonably to prevent harassment, stating:

> In our view, the State's efforts to prevent sexual harassment, while perhaps not as comprehensive as Helm would have liked, were nonetheless reasonable. Numerous courts have held that employers acted reasonably as a matter of law when they adopted valid sexual harassment policies, distributed those policies to employees via employee handbooks, and either provided no sexual harassment training or provided training only to managers.

*Id.* at 1289; *see also Debord*, 737 F.3d at 654 ("Mercy has shown that it 'adopted valid sexual harassment policies [and] distributed those policies to employees via employee handbooks.' The prevention component of the *Faragher* defense does not require more.") (quoting *Helm*, 656 F.3d at 1289) (alteration in original).

In this case, Defendant's Employee Handbook contains an Unlawful Harassment/Sexual Harassment Policy, which prohibits all forms of harassment, provides examples of what constitutes unlawful harassment, advises employees to whom they can report claims of harassment, including posting the owner's name and phone number in the office of each store, and prohibits retaliation against any employee who complains of

harassment.   (UMF No. 11).   This policy is distributed to employees through an employee handbook and Plaintiff signed an acknowledgment form when she was first hired, stating that she understood it was her responsibility to read and follow the policies contained in the handbook.   (UMF No. 5).   Plaintiff was even required to take a quiz concerning the contents of Defendant's Employee Handbook (UMF No. 6), and Plaintiff admits she was aware of and understood Defendant's Unlawful Harassment/Sexual Harassment Policy (UMF No. 2).

Undisputed Evidence also establishes that Defendant's Employee Handbook contained a Management Training policy, which stated that managers were trained on EEOC and labor laws.  This policy also advised an employee who believed they had been subjected to discrimination to make a written complaint to Defendant's owners or managers and contained an anti-retaliation provision.  (UMF No. 7).

Based on the authorities cited above, Defendant took appropriate steps to prevent unlawful harassment as a matter of law through its implementation of the Unlawful Harassment/Sexual Harassment Policy, and its distribution to and acknowledgement of understanding by each of its employees.

### D. Plaintiff Failed to Reasonably Take Advantage of Defendant's Discrimination and Harassment Safeguards.

The second element of the *Faragher* defense requires Defendant to show that Plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Helm*, 656 F.3d at 1287 (quoting *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 765, 118

S.Ct. 2257).  In *Helm*, the Tenth Circuit held that in order for a defendant to establish that it took proper action to correct harassment, the defendant is required to show it acted reasonably promptly "when it was given proper notice of [the plaintiff's] allegations as required under its complaint procedures."  *Helm*, 656 F.3d at 1290.

In evaluating this factor, the *Helm* Court found that the plaintiff's alleged report of harassment provided absolutely no details of the harasser's conduct or "even mention sexual harassment."  *Id.*  The Tenth Circuit held:  "In our view, Helm's vague complaint did not constitute adequate notice that would have triggered Chief Judge King's duty to take corrective action."  *Id.* at 1290-91 (citation omitted); *see also Debord*, 737 F.3d at 655 ("In sum, Mercy cannot be held vicariously liable.  Debord stayed silent even after Mercy provided sexual harassment training, annual reminders, an open-door policy with the management team.  Her sexual harassment claim fails to raise a disputed, material fact.").

Based on these authorities, Plaintiff cannot establish that she reasonably took advantage of Defendant's discrimination and harassment safeguards.  She was fully aware of Defendant's Unlawful Harassment/Sexual Harassment Policy, what was prohibited under that policy, that it was her responsibility to report her complaints of harassment to management, and was aware that Argumaniz's telephone number was posted in the office. (UMF No. 12).  Despite this understanding, Plaintiff made no written complaints of harassment to Defendant's managers or owners.  (UMF Nos. 8, 26 and 32).

Although Plaintiff alleges that she reported her harassment complaints to Mayberry (Complaint, ¶ 14, at p. 3), she admitted in her deposition that she provided no

details, stating only that Smith "won't leave me alone or something like that" and "I didn't want to go on a date with him." (UMF No. 30). Plaintiff admitted she did not use the words "sexual harassment" or "complaint" and never put her allegations in writing prior filing this lawsuit. (UMF No. 31.) As in *Helm*, this report was insufficient to place Defendant on notice that Plaintiff was reporting sexual harassment or trigger Defendant's duty to take corrective action. Plaintiff's failure to report her allegations of harassment precludes her from raising a disputed fact on her hostile environment sexual harassment claim and summary judgment for Defendant is warranted.

## II.   PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE CLAIM OF RETALIATION UNDER TITLE VII.

### A. Burden of Proof.

Title VII also makes it unlawful for an employer to retaliate against an employee for opposing sexual harassment in the workplace. 42 U.S.C. § 2000e-3(a). "To prevail on a Title VII retaliation claim, a plaintiff must establish that retaliation played a part in the employment decision and may choose to satisfy this burden in two ways." *Fye v. Okla. Corp. Com'n,* 516 F.3d 1217, 1224-25 (10th Cir. 2008); *see also Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 549 (10th Cir. 1999).

First, the plaintiff "may <u>directly</u> show that retaliatory animus played a 'motivating part' in the employment decision." *Fye,* 516 F.3d at 1225 (emphasis added). Second, without direct evidence of discrimination or retaliation, the Tenth Circuit applies "the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in Title VII and § 1981 cases." *Antonio v. Sygma Network,*

*Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).  Under *McDonnell Douglas*, if the plaintiff can establish a prima facie case of discrimination or retaliation, the burden shirts to the defendant to show a legitimate non-discriminatory or non-retaliatory reason for the adverse action.  If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext.  *Id.* (citations omitted).

To establish a prima facie case of retaliation, the plaintiff must show:  "(1) she engaged in protected opposition to discrimination [or harassment], (2) she suffered an adverse action that a reasonable person would have found material, and (3) there is a causal nexus between her opposition and the employer's adverse action.  *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed2d 345 (2006); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

### B. Plaintiff Did Not Engage in Protected Opposition to Unlawful Discrimination or Harassment.

As established above, Plaintiff has no direct evidence of retaliation because she never submitted any form of formal or informal sexual harassment complaint, as she was required to do under Defendant's policies.  (UMF Nos. 11-12, 26 and 32).  Plaintiff never told Smith his alleged conduct was inappropriate, offensive or unwelcome.  (UMF No. 28).  Further, her general, non-specific alleged complaint to Mayberry was insufficient to place Defendant on notice that she was making a sexual harassment claim or trigger Defendant's duty to take any form of corrective action.  (UMF No. 30).

In *Anderson v. Wintco Inc.*, 314 F. App'x 135 (10th Cir. 2009) (unpublished), a female employee, a car-hop at a Sonic drive-in restaurant, sued her former employer, asserting Title VII hostile environment sexual harassment and retaliation claims. The plaintiff appealed to the Tenth Circuit after the District Court entered summary judgment for the former employer. The District Court found that the defendant had exercised reasonable care to prevent and correct any discriminatory harassing behavior by adoption of an effective anti-harassment policy, and the plaintiff failed to take advantage of that policy. The District Court also ruled the plaintiff had not engaged in any protected activity because she never complained of the harassment. *Id.* at 137.

The Tenth Circuit agreed, holding:

> Ms. Anderson argues her denials of Mr. Sharon's request for "boob shots" were sufficient to constitute protected opposition. We disagree. As the district court stated, "[p]rotected opposition can range from filing formal charges to voicing informal complaints to supervisors." "Although no magic words are required, to qualify as protected opposition, the employee must convey to the employer his or her concerns that the employer has engaged in [an unlawful] practice." It is undisputed that during her employment, Ms. Anderson never conveyed to Sonic, formally or informally, her concerns or belief that Mr. Sharon was harassing her. Ms. Anderson does not even direct this court to any evidence that she ever expressed to Mr. Sharon that his conduct was offensive or unwelcome.

*Id.* at 140-41 (internal citations omitted) (alteration in original). Based on these findings, the Tenth Circuit affirmed the dismissal of the retaliation claim. *Id.* at 141; *see also Peterson v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002) ("An employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition.") (citing *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)) (emphasis in

original); *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) (holding that to qualify as protected opposition, the employee need not use any "magic words" but must convey her concern that the employer has engaged in an unlawful discriminatory practice; "[g]eneral complaints … will not suffice[ ]").

Based on these authorities, Plaintiff did not engage in protected opposition to unlawful harassment and cannot establish a prima facie case of retaliation.

### C. Plaintiff Was Terminated for Legitimate Non-Discriminatory and/or Non-Retaliatory Reasons and Cannot Establish Pretext.

#### 1. Legitimate Non-Discriminatory/Non-Retaliatory Reasons.

Even if Plaintiff could establish a prima facie case of retaliation, Argumaniz had no knowledge of Plaintiff's allegations of sexual harassment and terminated Plaintiff's employment for legitimate non-discriminatory and/or non-retaliatory reasons.  There is no evidence that Argumaniz did not terminate plaintiff for the reasons she stated, and which Plaintiff reported to the EEOC as the basis for her termination.

Undisputed evidence establishes that Plaintiff was terminated by Argumaniz on October 2, 2013, for mishandling company funds on seven (7) separate occasions, which constitute separate violations of the Cash Handler policy.  Geiger confirmed she was terminated for this basis on her EEOC Intake Questionnaire, signed on November 27, 2013.  (UMF Nos. 24-25).  Documentation in Plaintiff's personnel file establishes that she understood the requirements of Defendant's Cash Handler Policy and undisputed evidence establishes that Plaintiff's cash drawer was short or over seven (7) separate occasions during her one-month employment period, and she has no evidence to dispute

these violations.  (UMF Nos. 14-22).  Plaintiff was also aware of Defendant's attendance policy but admits she was tardy for work four (4) times.  (UMF Nos. 10 and 23).

Mayberry admits she made the recommendation to Argumaniz to terminate Plaintiff's employment based on Mayberry's review of Plaintiff's personnel file. Mayberry testified that her review of Plaintiff's personnel file established that she had a lot of mishandling of funds, tardiness, and was not a workable employee, in Mayberry's opinion.  (UMF No. 34; Mayberry depo., 49/20-23; 78/24-79/13, Ex. "17").

This undisputed evidence establishes that Plaintiff was terminated for legitimate non-discriminatory and non-retaliatory reasons.  Because Plaintiff cannot establish pretext, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### 2.   Pretext.

In *Debord*, the Tenth Circuit explained a plaintiff's burden of proof in establishing pretext in a Title VII retaliation action.  The Court held:

> "To show pretext, [Debord] must produce evidence showing weakness, implausibility, inconsistency, incoherency, or contradiction in [the employer's] stated reasons, such that a reasonable jury could find them unconvincing."  "'In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear *to the person making the decision*,'" not as they appear to the plaintiff.  And we do not ask "whether the employer's proffered reasons were wise, fair or correct", we ask only "whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs."

*Debord*, 737 F.3d at 655 (quoting *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011)) (internal citations omitted) (italics in original).

Based on this standard, there is no evidence to show that Argumaniz did not terminate Plaintiff based on her good-faith belief that Plaintiff had committed seven (7)

separate cash-handling violations and was tardy for work on four (4) occasions. Argumaniz's decision was based on a recommendation by Mayberry and review of Plaintiff's personnel file and Smith was not involved in the decision in any way. (UMF No. 34; Mayberry depo., 49/20-23; 78/24-79/13, Ex. "17"). Because Plaintiff cannot established that Argumaniz made the decision to terminate Plaintiff's employment for pretextual reasons, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## **CONCLUSION**

For the reasons stated above, Defendant, NSC Chicken-Duncan, LLC, is entitled to summary judgment on all claims asserted by Plaintiff, Brandi Geiger.

Respectfully submitted,

*s/Jefferson I. Rust*
JEFFERSON I. RUST, OBA #16722
KELLY J. KRESS, OBA #30771
TOMLINSON · RUST · MCKINSTRY · GRABLE
Two Leadership Square, Suite 450
211 N. Robinson Ave.
Oklahoma City, OK 73102
(405) 606-3350 Telephone
(866) 633-6162 Facsimile
jeffr@trmglaw.com
kellyk@trmglaw.com
***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on <u>February 2, 2016</u>, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants.

Joshua C. Stockton, OBA #21833:  stocktonlawgroup@gmail.com
***Attorney for Plaintiff***

<em>s/Jefferson I. Rust</em>
JEFFERSON I. RUST