# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDY GEIGER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )  Case No. CIV-15-69-D |
| | ) |
| NSC CHICKEN LP, d/b/a | ) |
| CHICKEN EXPRESS, | ) |
| | ) |
|    Defendant. | ) |

## <u>O R D E R</u>

Before the Court is Defendant NSC Chicken-Duncan, LLC's[1] Motion for Summary Judgment [Doc. No. 18]. Plaintiff has responded [Doc. No. 20], and Defendant has replied [Doc. No. 21]. The matter is fully briefed and at issue.

## Background

Plaintiff Brandy Geiger, a former employee of Defendant, brought this action in January, 2015, asserting Title VII[2] violations due to a sexually-hostile work environment and retaliatory discharge. Plaintiff seeks compensatory and punitive damages, lost wages, front pay, pre- and post-judgment interest, costs, and attorney's fees. Defendant seeks summary judgment on the ground that Plaintiff cannot establish actionable claims under Title VII. In response, Plaintiff contends that a reasonable jury could in fact find Defendant liable for her claims.

---

[1] Defendant states that Plaintiff's pleading, and thus the caption of the case, incorrectly identifies the company as "NSC Chicken LP." Plaintiff has not acknowledged Defendant's contention and has made no attempt to alter the caption in this case. Nonetheless, both parties agree that Defendant's company does business as "Chicken Express."

[2] 42 U.S.C. § 2000e, *et seq.*

**Standard of Decision**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255.  All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party.  *Id.*  If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment.  *Celotex*, 477 U.S. at 322-23.  If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial.  *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A).  "The court need consider only the cited materials, but may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The Court does not weigh evidence and make findings of fact on a motion for summary judgment.  The Court only determines whether there is a genuine dispute

concerning a material fact. *See Jones v. Barnhart*, 349 F.3d 1260, 1265 (10th Cir. 2003). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[3]

Plaintiff began her employment at Defendant's Duncan, Oklahoma location on September 2, 2013, as a crew member. As part of her training, Plaintiff signed an acknowledgment stating that she understood the policies contained in Defendant's Employee Handbook.[4] Those policies included attendance, cash handling, rules of conduct, management training, and reporting of sexual harassment.

Within a week of Plaintiff's hiring, Defendant's Store Manager, Daniel Smith, called Plaintiff "sexy." Plaintiff did not respond to Mr. Smith's comment. Mr. Smith again approached Plaintiff a few days later and touched her buttocks while pulling her wallet from her back pocket. Plaintiff did not consent to Mr. Smith's actions. Just days later, Mr. Smith asked Plaintiff if she enjoyed "anal sex" and whether she "liked it rough." Pl.'s Resp. [Doc. No. 20] at 15, ¶ 15. Mr. Smith also began questioning Plaintiff about her sexual relationship with her boyfriend, specifically asking whether he was "satisfying." *Id.* at 15, ¶ 16. Prior to her discharge, Mr. Smith asked Plaintiff to take a motorcycle ride with him. When she

---

[3] This statement includes facts presented by both parties that are supported by the record, but facts stated by the parties that are unsupported or immaterial to the issues addressed herein are disregarded. All facts are stated in the light most favorable to Plaintiff.

[4] Additionally, Plaintiff completed a quiz demonstrating she had read the Employee Handbook and sufficiently understood the policies contained therein.

refused, Mr. Smith began following Plaintiff around the store. Plaintiff made a verbal complaint to Defendant's Associate Manager, Rachel Mayberry, stating that Mr. Smith "[wouldn't] leave [her] alone," and that he kept asking others if she was mad at him. *Id.* at 16, ¶ 22. In response, Ms. Mayberry laughed and acknowledged that Mr. Smith was following Plaintiff around, but then stated, "he acts like that with all of the young girls." *Id.* at 17, ¶ 24.

Prior to Plaintiff's termination, Ms. Mayberry overheard Plaintiff and another female employee, Quinette Taylor, discussing Mr. Smith and possibly filing a sexual harassment complaint with the Equal Employment Opportunity Commission ("EEOC").[5] Ms. Mayberry subsequently contacted Cynthia Argumaniz, HR Director and General Manager, "about the following[:] . . . . Daniel stated that Brandy Geiger and Quinette Taylor were in alliance to have a possible sexual harassment against Daniel." Mayberry Dep. [Doc. No. 20-4] at 90-91. At some point, Ms. Mayberry recommended to Ms. Argumaniz that Plaintiff's employment be terminated. Plaintiff was terminated on October 2, 2013, for "violations of policies." Mot. [Doc. No. 18] at 8, ¶ 24.

During Plaintiff's employment with Defendant, Plaintiff's cash drawer was unbalanced on eight separate occasions.[6] This was not an unusual event at the Duncan

---

[5] This was not the first time that Mr. Smith's behavior had been called into question. Previously, Mr. Smith had received a warning regarding his behavior toward another employee with whom he had become "too close," and he had also been reported for engaging in sexual conversation inappropriate for the workplace. *See* Statement [Doc. No. 20-1]; Verbal Warning [Doc. No. 20-7]; Mayberry Dep. [Doc. No. 20-4] at 86.

[6] The following is a list of Plaintiff's shortage/overage violations and their corresponding dates: Sept. 3, 2013 (-$12.58); Sept. 9, 2013 (-$15.36); Sept. 10, 2013 ($-7.66); Sept. 17, 2013 (-$12.84); Sept. 19, 2013 (-$26.46), Sept. 24, 2013 (+$13.86), Sept. 25, 2013 (-$16.10); and Oct.1, 2013 (-$10.18).

location, and Plaintiff was not the sole offender.[7] Plaintiff was also late to work on four separate occasions.

## Discussion

### I. Hostile Work Environment Resulting from Sexual Harassment

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] . . . conditions . . . of employment, because of . . . [her] sex." 42 U.S.C. § 2000e-2(a)(1). This provision encompasses "subjecting an employee to a hostile work environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (citing *Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 64 (1986)). To establish a prima facie case of a sexually-hostile work environment, Plaintiff must demonstrate that: 1) she is a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based on sex;[8] and 4) due to its severity or pervasiveness, the harassment altered a term, condition, or privilege of her employment and created an abusive working environment. *See id.* at 1186.

The first element is not in dispute. As to the second and third elements, Plaintiff presented evidence of at least five sexual statements and one physical touch directed at her by Mr. Smith over a three-week period. The record further reflects other conduct that, when added to the previously stated advances, made Plaintiff uncomfortable while at work.

---

[7] Mr. Smith is responsible for training crew members on cash handling procedures. On September 5, 2013, he received a verbal warning for failing in this duty.

[8] Sexual harassment includes "'[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.'" *Meritor*, 477 U.S. at 65 (quoting 29 CFR § 1604.11(a) (1985)).

Defendant points out that Plaintiff "never told [Mr.] Smith his alleged conduct was inappropriate, offensive, or unwelcome" (Mot. [Doc. No. 18] at 9, ¶ 28), and she also failed to "put her complaint in writing prior to filing this lawsuit and never made any complaints to [Ms.] Argumaniz" (*Id.* at 10, ¶ 32). Despite these assertions, Plaintiff maintains Mr. Smith's advances were unwelcome, and the evidence presented is enough to meet her prima facie burden with regard to elements two and three.

Therefore, the central question facing the Court is whether Mr. Smith's behavior was so severe or pervasive as to alter the conditions of Plaintiff's employment. As the Tenth Circuit has pointed out, "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) (quotations omitted).

Defendant contends, however, that even if Plaintiff can establish that she was subject to a sexually-hostile work environment, Defendant is not directly or vicariously liable and, therefore, should still be granted summary judgment. Defendant's argument rests on the contention that it had no actual or constructive knowledge of the alleged hostile work environment and, further, Plaintiff failed to utilize Defendant's policy of reporting sexual harassment.

An employer can be directly or vicariously liable for a sexually-hostile work environment. As discussed by the Tenth Circuit in *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642 (10th Cir. 2013):

> To show direct employer liability, an employee must present enough evidence for a reasonable jury to find that the employer knew or should have known about the harassment but failed to stop it. The "should-have-known" formulation is, in effect, a showing that the employer was negligent in failing to stop harassment. Even without a showing of negligence, an employer can still be found vicariously liable for harassment committed by a supervisor against an employee. To avoid vicarious liability, an employer can take advantage of an affirmative defense – the *Faragher* defense – by showing both that the employer exercised reasonable care to avoid harassment and to eliminate it when it might occur, and that the complaining employee failed to act with like reasonable care to take advantage of the employer's safeguards.

*Id.* at 650 (quotations and citations omitted).

Without addressing Defendant's *Faragher* defense, the Court first looks to the record for evidence of direct liability. The record shows that Defendant was aware of Mr. Smith's proclivity toward inappropriate sexual conversation and behavior toward female employees. *See* Statement [Doc. No. 20-1]; Confidential Statement [Doc. No. 20-3]; Mayberry Dep. [Doc. No. 20-4] at 86; Verbal Warning [Doc. No. 20-7]. Whether Defendant's knowledge, combined with Plaintiff's singular statement to Ms. Mayberry regarding Mr. Smith's behavior toward her, is enough to show that Defendant "should have known" about the alleged harassment is a material question of fact. Therefore, because there exists a disputed question of material fact, the Court finds that Defendant is not entitled to summary judgment as a matter of law on Plaintiff's sexually-hostile work environment claim.

**II. Sexual Discrimination and Retaliatory Discharge**

Plaintiff's Title VII claim of retaliation is governed by the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Young v. Dillon*

*Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006). Accordingly, Plaintiff must establish a prima facie case of discrimination and retaliation based on her status. *Id.* This burden may be satisfied by a "minimal" showing. *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1211 (10th Cir. 2011) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to present a justifiable, non-discriminatory reason for its conduct. *Id.* Defendant's burden is "exceedingly light." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007). Once Defendant proffers a legitimate reason, the burden shifts back to Plaintiff to show "there is a genuine issue of material fact regarding whether the . . . justification was pretextual." *Id.* (citing *Young*, 468 F.3d at 1249). A proffered reason is mere pretext for discrimination if it is "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reason[] [is] unworthy of belief." *Young*, 468 F.3d at 1249.

It is "[w]ithout question, [that] when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor*, 477 U.S. at 64. As discussed above, Plaintiff has submitted sufficient evidence of sexual harassment to make out a prima facie case. Therefore, Plaintiff need only establish a prima facie case of retaliation. To do so, Plaintiff must demonstrate that she suffered an adverse employment action after exercising rights protected by Title VII. *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007); *Robbins v. Jefferson Cnty. Sch. Dist.*, 186 F.3d 1253, 1258 (10th Cir. 1999). There must be a causal connection between the adverse action and the exercise of Title VII rights. *Id.*

Plaintiff contends that she was fired because Defendant knew that Plaintiff was being sexually harassed by Mr. Smith and planned to file a complaint with the EEOC. The summary judgment record shows that Plaintiff reported Mr. Smith's behavior to Ms. Mayberry, one of Plaintiff's supervisors. The record further shows that Ms. Mayberry overheard Plaintiff and another coworker discussing a possible sexual harassment complaint against Mr. Smith. Additionally, the record shows that Ms. Mayberry suggested Plaintiff for termination, and Plaintiff was terminated.

Sexual harassment is prohibited by Title VII, and reporting it to management or the EEOC is an exercise of Title VII rights. Further, Plaintiff's termination was an adverse employment action. There is conflicting evidence in the record, however, regarding whether Ms. Mayberry suggested Plaintiff for termination before or after she overhead Plaintiff's discussion of a potential EEOC claim. *See* Mayberry Dep. [Doc. No. 20-4] at 92-99. Construing the facts most favorably to Plaintiff – that Ms. Mayberry suggested Plaintiff for termination only after hearing her discuss a potential EEOC claim against Mr. Smith, the Court concludes that Plaintiff has minimally met her prima facie burden, and the burden shifts to Defendant to provide a non-discriminatory reason for Plaintiff's termination.

Defendant contends Plaintiff was terminated for multiple violations of store policies. In support of its proffered reason, Defendant produced evidence showing Plaintiff was late to work four times and had cash shortages/overages on eight separate occasions. These infractions were documented by Defendant. Plaintiff was aware her infractions were against Defendant's policies and that consequences for such violations could include termination.

Accordingly, the Court finds Defendant has articulated a legitimate, non-discriminatory reason for its decision to terminate Plaintiff.

To demonstrate pretext, Plaintiff notes that neither tardiness nor mishandling of funds were uncommon at Defendant's Duncan location, and that disciplinary action regarding either rarely resulted in termination. Further, Plaintiff produced evidence that Defendant was aware of Mr. Smith's failure to properly train employees, and that he previously used "mishandling of funds" as pretext to fire a coworker with whom he had become "too close." Verbal Warning [Doc. No. 20-7]. As noted above, pretext can be shown by weaknesses or inconsistencies in Defendant's proffered reason. Given the record evidence, viewed in the light most favorable to Plaintiff, the Court concludes that a rational factfinder could find Defendant's stated reason for terminating Plaintiff unworthy of belief.

## Conclusion

The Court has carefully considered all of the parties' arguments. To the extent any issue was not specifically addressed above, it is either moot or without merit. Accordingly, the Court finds Defendant's Motion for Summary Judgment [Doc. No. 18] should be DENIED.

IT IS SO ORDERED this 9th day of September, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE